JoNes, Judge,
delivered the opinion of the court.
■ Plaintiff, as assignee of George B. Marx, instituted this suit to recover damages alleged to have been caused by the cancellation of a wartime contract to furnish wire reel carts to the Signal Corps of the United States Army.
The case is unusual in many respects.
In the jurisdictional act it is provided that any part of the récord of the committee hearings or the proceedings in Congress and all exhibits, affidavits or inventories filed with the War Claims Committee and all government reports, statements and other documents on file in any department of government “or elsewhere” having a.bearing on the claim, “may be introduced before the Court of Claims with the full force of depositions subject to objections as to materiality and relevancy.”
Before the World War George B. Marx had been engaged at the request of the Signal Corps of the Army in developing wire carts. These carts carried reels of wire which unwound as the carts were drawn along the ground. The wire was used in setting up communication between different army units, especially in combat areas. The carts were so designed that they would unreel the wire over rough surface areas and reel it up again when it was desired to be used elsewhere under the rapidly changing conditions and the shifting of positions.
*640 George B. Marx appeared to have the ability to make the types of vehicles which the Signal Corps needed and his son, Robert D. Marx, a special talent in designing them.
At the time the order in question was given, Marx was already engaged in fulfilling one contract for such carts for the defendant. On June 6, 1918, he received from Major-Hough, procurement officer, an oral order for 200 more. On June 18 he was given a serial number to identify the order, and on July 8, 1918, the order for the carts was reduced to writing with thp statement that the contract was to be numbered 4241, and would follow. The price was not yet stated. On August 3, 1918, the order was amended setting, a price of $1,090 per cart. The formal contract was signed August 6, 1918.
Specifications and designs were not included in the contract as the design was to be that of the son, Robert D. Marx.
Because of the urgent need, plaintiff proceeded with his plans for production as soon as the oral order was given without awaiting the formal signing of the contract. This was-understood by both parties.
The contractor was far along toward the completion of his contract when on December 9, 1918, he received a wire from the contracting officer directing him to stop production.
The issue is as to the amount of damages caused by the cancellation of the order.
Under the broad provisions of the act conferring jurisdiction on the Court of Claims, a wealth of documents, papers,, affidavits, and inventories has been introduced.
By direction of the Signal Corps, Inspector Sweeney was detailed to check inventory of parts and finished material and arrange proper storage.
At the same time Captain Potts was sent to the contractor’s plant to investigate and to endeavor to arrive at an agreement with the contractor as to the amount due by the Government. His findings are based on the retention by the contractor of all material and partly finished products.
The amount found to be due by the Government was the sum of $208,198.54.
The work of Captain Potts was finished about March 18, 1919.
*641 An inspection was made of the original records including' time cards, pay-roll books, vouchers, and original invoices of' materials.
In May 1919 C. E. Varcoe, of the Bureau of Aircraft Pro--duction of the United States Army was sent to the Marx plant to make an audit for his bureau. Before he had com--pleted his inventory he was directed to discontinue because the task of settling the contract had been turned over to the Signal Corps.
In June 1919 the Bureau of Aircraft Production sent an accountant by the name of Franklin C. Leyhe to the contractor’s plant to make an investigation and report for the purpose of endeavoring to effect a settlement. After Leyhe returned, the defendant’s auditor communicated with the contractor advising that the amount due had been found to be $139,885.80. It developed later that the certificate to the tabulation was not signed by Franklin C. Leyhe, but was signed in another’s handwriting as Franklin C. Leythe.
On account of the fact that his creditors were pressing him for settlement and he could not postpone payment without imperiling his credit, the plaintiff accepted this sum, at the same time protesting its insufficiency.
Many errors were found in the Leyhe report. In fact,. Leyhe himself made an affidavit some time later to the effect that a portion of the summary statement of claim purporting to have been certified to and signed by him, was prepared without his knowledge, and that such statement was not signed by him.
A careful examination of the record fails to show that there was any real effort on the part of the accountant to arrive at the true amount of the damages. On the contrary, there is considerable evidence to indicate a lack of good faith either on the part of the accountant or on the part of the officer who gave him his assignment and instructions.
To say the least, the numerous mistakes in his report, the circumstances under which it was made, the facts that later developed in reference to him and to his report, and the numerous documents, affidavits, and instruments filed of record in this case tend to discredit his report and make it of little value in attempting to arrive at a proper conclusion.
*642 Frank S. Cooley of the Signal Corps made a separate inventory of the materials at the plant.
At the time the material from the plant was moved into the Government warehouse a check was made of the material in what was termed “Tally In” sheets of the Signal Corps. This gave' the number of pieces and classified the materials as rough, partly finished, or finished.
In the year 1928 the War. Department directed a reaudit of the plaintiff’s claim against the United States and detailed Thomas W. Penn, one of its accountants, to re-examine the entire claim. He began !work in December 1928. There was made available to him the books and records of the contractor and the work previously done on the claim by the Government, including inventories, classifications, and miscellaneous statements.
According to the Penn audit, in addition to the sum of $189,885.80, there was found to be due the contractor $58,259.02. The items making up this amount are set out in the special findings.
The Perm audit, while not entirely accurate, appears to be more nearly so than any of the others that were made.
We have gone through the various items that are included in these reports and have checked them against the numerous documents, affidavits, and instruments set out in the voluminous record. Among these items were insurance, interest, overhead, depreciation, labor costs, the classification of materials, taxes, cost of inventory, and miscellaneous others.
One item, that of insurance, was found to be included twice, and the second inclusion was therefore eliminated. The interest payment on money invested in materials purchased for the contract has been disallowed, because much of the material on hand was found to have been paid for after the plaintiff had been paid the $139,885.80. Other items not properly included or not clearly proved or not proved in full have been reduced or discarded entirely in accordance with, the best available proof as shown by the record.
After making these various corrections we find that there is a balance due. the plaintiff in the amount of $52,285.12.
Inasmuch as the special act conferred jurisdiction upon the.Court of Claims to enter a decree or judgment notwith *643 standing the bars or defenses of any settlement, release, or adjustment heretofore made, we find that the plaintiff is entitled to recover the amount indicated.
The settlement of this claim has been long delayed. That delay has not been the fault of the plaintiff. At no point in the extensive record is there any indication that the work done by the plaintiff was not entirely satisfactory. In fact,, the record abundantly proves that, the plaintiff was doing a much needed work and was furnishing vital materials for' the prosecution of the war, and that the articles which he produced were in every way satisfactory. ' He has at various times shown a disposition to cooperate with the various officials of the different departments of the Government who were sent to check up on his claim for damages and upon the materials which went into the items of expenditure, notwithstanding these numerous checks and investigations must have become somewhat burdensome.
George B. Marx went forward with the work under the pressure of a great need, even before he had the formality of a written contract. He did so at the instance and urgent request of defendant’s duly constituted officers.
The record clearly shows that he is entitled to recover from the defendant the sum of $52,235.12.
It is so ordered.
MaddeN, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.
Whitaxer, Judge, took no part in the decision of this case.